**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CONSUMER PRODUCTS ASSOCIATION**,  ) | |
| ) | |
| Plaintiff,  ) | No. 1:23-cv-00714 (RJL) |
| ) | |
| v.  ) | **DEFENDANT 310 NUTRITION, LLC'S** |
| ) | **MOTION TO DISMISS THE** |
| **310 NUTRITION, LLC**,  ) | **COMPLAINT** |
| ) | |
| Defendant.  ) | |
| ) | |
| ) | |

## <u>DEFENDANT 310 NUTRITION, LLC'S MOTION TO DISMISS</u>

Defendant 310 Nutrition, LLC ("310 Nutrition"), by and through undersigned counsel, hereby moves the Court to dismiss the Complaint [Dkt. 1-1] filed by Plaintiff Consumer Products Association's ("Plaintiff") for multiple straightforward reasons pursuant to Rule 12 of the Federal Rules of Civil Procedure.

*First*, this case should be dismissed in its entirety because neither Plaintiff nor the "general public" it seeks to represent suffered a concrete and particularized injury, and Plaintiff therefore lacks both Article III and statutory standing.  *Second*, Plaintiff's Consumer Protection Procedures Act claim should be dismissed because no reasonable consumer would be misled by 310 Nutrition's alleged failure to disclose the immaterial fact that its All-In-One Meal Replacement Shakes may contain an amount of *Bacillus cereus* bacteria that, according to the references cited by Plaintiff, is so small it poses no possibility of causing human illness.  *Third*, Plaintiff's "Failure to Warn Negligence Per Se" claim should be dismissed because Plaintiff has failed to plausibly plead a statutory violation or any other element to support a negligence claim under a negligence per se theory.

Because Plaintiff cannot cure these deficiencies, the Court should dismiss the Complaint with prejudice.

WHEREFORE, for the reasons set for in the accompanying Memorandum of Points and Authorities, the Court should grant 310 Nutrition's Motion to Dismiss the Complaint.

Dated:  April 7, 2023

/s/ Sascha Henry

Sascha Henry (*admitted pro hac vice*)
James Glassman (*admitted pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 S. Hope Street, 43rd Floor
Los Angeles, CA 90017
Telephone: (213) 620-1780
Facsimile:  (213) 620-1398
shenry@sheppardmullin.com
jglassman@sheppardmullin.com

/s/ Hannah Wigger

Hannah Wigger (D.C. Bar No. 208851)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C.  20006
Telephone: (202) 747-1900
Facsimile:  (202) 747-1901
hwigger@sheppardmullin.com

*Attorneys for Defendant 310 Nutrition, LLC*

## **CERTIFICATE OF SERVICE**

On April 7, 2023, I electronically filed the foregoing document through the CM/ECF

system, which will send a notice of electronic filing to the attorneys of record.


*/s/ Sascha Henry*
           Sascha Henry

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CONSUMER PRODUCTS ASSOCIATION,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:23-cv-00714 (RJL) |
| | ) | |
| v. | ) | **DEFENDANT 310 NUTRITION, LLC'S** |
| | ) | **MEMORANDUM OF POINTS AND** |
| **310 NUTRITION, LLC,** | ) | **AUTHORITIES IN SUPPORT OF ITS** |
| | ) | **MOTION TO DISMISS THE** |
| Defendant. | ) | **COMPLAINT** |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.      Plaintiff Lacks Constitutional and Statutory Standing Because Neither Plaintiff Nor the
        General Public It Seeks to Represent Suffered an Injury. .................................................. 6

II.     Plaintiff Has Failed to Plausibly Plead a CPPA Claim or a Negligence Claim Under a
        Negligence Per Se Theory. ............................................................................................... 10

  A.    Plaintiff's CPPA Claim Fails as No Reasonable Consumer Was Misled by the Immaterial
        Fact that the Products May Contain Under 10 cfu/g of *B. Cereus*. ................................. 10

  B.    Plaintiff Fails to Plausibly Plead Any Element of Its Negligence Claim Under a
        Negligence Per Se Theory. ............................................................................................... 13

CONCLUSION.................................................................................................................. 16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*325-343 E. 56th St. Corp. v. Mobil Oil Corp.*,
   906 F. Supp. 669 (D.D.C. 1995) ................................................................. 15, 16

*Alicke v. MCI Communs. Corp.*,
   111 F.3d 909 (D.C. Cir. 1997) .............................................................................. 11

*Am. Oversight v. Biden*,
   2021 WL 4355576 (D.D.C. Sept. 24, 2021)............................................................ 4

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ................................................................................ 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 5, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 5

*Conference of State Bank Supervisors v. Office of the Comptroller of the Currency*,
   313 F. Supp. 3d 285 (D.D.C. 2018) ...................................................................... 6

*Ctr. for Law & Educ. v. Dep't of Educ.*,
   396 F.3d 1152 (D.C. Cir. 2005) ........................................................................ 7, 8

*Ersado v. Rockpoint Grp., LLC*,
   2023 WL 2705781 (D.D.C. Mar. 29, 2023) ......................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
   528 U.S. 167 (2000) ............................................................................................ 6

*Grand Lodge of the FOP v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C. 2001) ......................................................................... 5

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ....................................................................................... 6, 7

*Hoffman v. Kraft Heinz Foods Co.*,
   2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023) .................................................. 11, 12

*Hunter v. District of Columbia*,
   64 F. Supp. 3d 158 (D.D.C. 2014) ................................................................. 14, 15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................ 5

*Myers v. Wakefern Food Grp.,*
   2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ............................................... 11, 12

*Physicians Comm. for Responsible Med. v. Vilsack,*
   867 F. Supp. 2d 24 (D.D.C. 2011) ............................................................ 6, 8

*Saucier v. Countrywide Home Loans,*
   64 A.3d 428 (D.C. App. 2013) ................................................................ 12, 13

*Tefera v. OneWest Bank,*
   19 F. Supp. 3d 215 (D.D.C. 2014) ............................................................... 4

*Turner v. U.S. Agency for Glob. Media,*
   502 F. Supp. 3d 333 (D.D.C. 2020) .......................................................... 7, 8

*Warth v. Seldin,*
   422 U.S. 490 (1975) .................................................................................. 6

*Whiting v. AARP,*
   701 F. Supp. 2d 21 (D.D.C. 2010) ........................................................ 10, 11

*Williams v. Lew,*
   77 F. Supp. 3d 129 (D.D.C. 2015) ............................................................... 5

## Statutes

D.C. Code § 28-3904 ..................................................................................... 10, 12

*   D.C. Code § 28-3905 ................................................................................ 2, 7, 8, 9

D.C. Code §§ 48-101, et seq. ............................................................................ 15

D.C. Code § 48-103 ...................................................................................... 2, 13, 14, 15

D.C. Food Regulation Act of 2002,
   2001 D.C. Sess. L. Serv. (West 2001) ........................................................... 15

## Other Authorities

*   FDA, Bacteriological Analytical Manual (BAM)
   Chapter 14 Guidance: Bacillus cereus ............................... 3, 4, 9, 12, 13, 15

*   FDA, Bad Bug Book
   Foodborne Pathogenic Microorganisms and Natural Toxins (2d ed. 2012) ....... 4, 9, 12, 13, 15

Federal Rule of Civil Procedure 12(b)(1) ........................................................ 1, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 1, 4, 5, 11

Int'l Union of Pure & Applied Chemistry,
    Compendium of Chemical Terminology (2d ed. 1997)............................................................... 8

* Kenneth Todar,
    Todar's Online Textbook of Bacteriology (2020) ............................................... 4, 9, 12, 13, 15

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant 310 Nutrition, LLC ("310 Nutrition"), moves to dismiss the Complaint filed by Plaintiff Consumer Protection Association ("Plaintiff").  [Dkt. 1-1] Complaint, ("Compl.").

## <u>INTRODUCTION</u>

310 Nutrition sells a variety of food products that help consumers improve their overall health and nutrition.  Among 310 Nutrition's products is its All-In-One Meal Replacement Shakes that come in a variety of flavors, four of which are at issue here—Chocolate Bliss, Caramel Sundae, Vanilla Crème, and Horchata (the "Products").  Plaintiff maintains that these Products present a "significant" and "unreasonable" risk of food poisoning that should have been disclosed to consumers.  But Plaintiff's own testing and the various authorities referenced or cited throughout the Complaint tell a very different story.

Plaintiff attaches to the Complaint test results from KML Laboratories, Inc. ("KML Labs") on 310 Nutrition's Products (the "KML Tests").  The motivation behind this testing is unclear, as Plaintiff curiously does not allege that any consumers have actually suffered food poisoning from the Products.  Plaintiff's own testing and authorities cited in the Complaint explain why—because the Products lack any remote possibility of causing food poisoning.  The KML Tests indicate that each Product may contain less than 10 colony-forming units per gram ("cfu/g") of *Bacillus cereus* ("*B. cereus*").  According to U.S. Food & Drug Administration ("FDA") sources Plaintiff references in the Complaint, *B. cereus* is a type of bacteria commonly found in raw and processed foods that may cause food poisoning if present in high concentrations—i.e., approximately $10^6$ (1,000,000) cfu/g.  In other words, the Products are at best 999,990 cfu/g shy of presenting any conceivable possibility of human food poisoning

according to Plaintiff's own authorities.  This issue undermines Plaintiff's entire theory of the case, cannot be cured by amendment, and warrants dismissal of this case with prejudice.

Aside from undermining Plaintiff's entire theory of the case, this more fundamentally means that Plaintiff lacks both Article III and statutory standing to bring its claims on behalf of itself or the general public.  Plaintiff does not allege that it has suffered any concrete or particularized injury, and the third-party standing doctrine does not apply if the plaintiff itself lacks Article III standing.  Plaintiff also does not—and cannot—satisfy the requirements for statutory standing under D.C. Code § 28-3905(k)(1)(D)(i) to bring a Consumer Protection Procedures Act ("CPPA") claim on behalf of the general public because the possibility of any consumer or class of consumers suffering an injury from the Products is far too remote.

Even if Plaintiff had alleged facts to support standing, Plaintiff also fails to state a claim under the CPPA for two reasons.  First, Plaintiff does not—and cannot—plausibly allege that reasonable consumers were misled because the test results at best show an amount of *B. cereus* so miniscule that the Products have no possibility of causing food poisoning according to the references cited in the Complaint.  Second, Plaintiff fails to plausibly allege that the presence of small amounts of *B. cereus* in the Products would be "material" to reasonable consumers.

Plaintiff's "Failure to Warn Negligence Per Se" claim fares no better for three reasons.  First, D.C. Code § 48-103(2)(Q)(i) is just a statutory definition, not a statutory duty or liability standard that actually can be violated.  Second, 310 Nutrition did not violate any statute anyway, as its Products are not adulterated within the meaning of D.C. Code § 48-103(2)(Q)(i).  Third, Plaintiff cannot establish that it is within the class of persons the statute was designed to protect or that it suffered an injury that the statute was enacted to prevent.

The Court should thus grant 310 Nutrition's Motion and dismiss this case with prejudice.

## BACKGROUND

According to Plaintiff, *B. cereus* "is a spore-forming, Gram positive, facultative anaerobic bacterium associated with food poisoning in humans."  Compl. ¶ 14.  In October 2022, despite no indication that the Products were actually causing *B. cereus* food poisoning, Plaintiff asked KML Labs to conduct microbiological testing on each of the Products.  *See id.* ¶ 20; *see also* Compl. Ex. B (reports of the KML Test results).  Three key facts can be gleaned from the KML Tests.  First, each product may contain an amount less than 10 cfu/g of *B. cereus*.  Compl., Ex. B at 1-4.  Second, KML Labs' "detection limit" is 10 cfu/g, meaning that KML Labs is incapable of analyzing any amount of *B. cereus* in a product unless it exceeds 10 cfu/g.  *See id.* Third, each *B. cereus* result also bears a distinct "‡" symbol next to it, which indicates that the test results "may include work not covered by KML's current ISO accreditation."  *Id.*

Other than the KML Tests, Plaintiff provides no information on several essential topics. For instance, there is no information on KML Labs' credentials.  There is no information on the methodologies KML Labs used to test the Products.  There is no information on how, when, and from whom KML Labs received the Products.  Without any of this information, and based on the alleged presence of an amount less than 10 cfu/g of *B. cereus* in the Products, Plaintiff maintains that the Products pose a serious risk of human illness and that 310 Nutrition should have warned consumers.  *See* Compl. ¶¶ 22, 35.

But Plaintiff's own authorities referenced or cited in the Complaint suggest a different conclusion—that the presence of an amount less than 10 cfu/g of *B. cereus* is too minute to pose any risk to consumers.  For example, FDA's Bacteriological Analytical Manual ("BAM") Chapter 14—referenced in the KML Tests appended to the Complaint—suggests that there must be at least $10^6$ cfu/g (1,000,000 cfu/g) of *B. cereus* before there is any risk of human illness.

[Dkt. # 11-1], Exhibit A ("FDA BAM Chapter 14").  FDA's Bad Bug Book—cited in Paragraphs 16 and 17, Footnotes 3 and 4 of the Complaint—indicates that there must be at least $10^5$ to $10^8$ cfu/g (100,000 to 100,000,000 cfu/g) of *B. cereus* for there to be any reasonable possibility of human illness.  [Dkt. # 11-2], Exhibit B, ("FDA Bad Bug Book").  Todar's Online Textbook of Bacteriology—cited in Paragraph 15, Footnote 2 of the Complaint—indicates that "*B. cereus* food poisoning can be confirmed by the isolation of greater than or equal to $10^5$ *B. cereus* organisms per gram."  [Dkt. # 11-3], Exhibit C, ("Todar's Textbook").  Stated differently, Plaintiff's own authorities provide that the Products are at least 99,990 to 99,999,990 cfu/g shy of carrying any possibility of causing *B. cereus* food poisoning.[1]

   In January 2023, despite its apparent failure to conduct a thorough factual investigation, Plaintiff filed this lawsuit in D.C. Superior Court, asserting two claims.  *See generally* Compl. Plaintiff's first claim alleges that 310 Nutrition violated the CPPA by "falsely and deceptively misrepresent[ing] . . . that the Products are safe for consumption."  *Id.* ¶¶ 26-32.  Plaintiff's second claim alleges that the Products "present[] a significant or unreasonable risk of illness" which constitutes "Failure to Warn Negligence Per Se."  *Id.* ¶¶ 33-42.  310 Nutrition timely removed to this Court in March 2023, [Dkt. 1], and now moves to dismiss Plaintiff's Complaint with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[1] The Court should consider each of the documents cited in this paragraph, and attached hereto as Exhibits A, B, and C, because they are incorporated by reference into the Complaint.  *See Am. Oversight v. Biden*, 2021 WL 4355576, at *2 n.3 (D.D.C. Sept. 24, 2021) (Leon, J.) ("[I]n considering a motion to dismiss, courts may consider . . . documents attached as exhibits or incorporated by reference in the complaint."); *Tefera v. OneWest Bank*, 19 F. Supp. 3d 215, 221-22 (D.D.C. 2014) (considering documents appended to and incorporated by reference into a complaint, which did not convert a motion to dismiss into a motion for summary judgment).

## **LEGAL STANDARD**

To withstand a motion to dismiss for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint must meet the "irreducible constitutional minimum of standing": (1) injury in fact, (2) traceability, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Pertinent here, a plaintiff's claims must "spring from an injury in fact - an invasion of a legally protected interest that is concrete and particularized, actual or imminent." *Williams v. Lew*, 77 F. Supp. 3d 129, 132 (D.D.C. 2015) (Leon, J.) (internal quotation marks omitted). Allegations of standing are subject to "closer scrutiny" than usually employed for a Rule 12(b)(6) motion. *Grand Lodge of the FOP v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001). However, like a Rule 12(b)(6) motion, courts are not required to "assume the truth of legal conclusions" or to "accept inferences that are unsupported by the facts set out in the complaint." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

A complaint is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if its factual allegations fail "to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While material factual allegations are accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* .

Plaintiff's Complaint is properly dismissed on application of these standards.

**ARGUMENT**

I.    **Plaintiff Lacks Constitutional and Statutory Standing Because Neither Plaintiff Nor the General Public It Seeks to Represent Suffered an Injury.**

Plaintiff leans on a slew of speculative inferences and unsupported assumptions that fall well short of pleading a plausible injury to support either Article III standing or statutory standing under the CPPA.  Based on Plaintiff's allegations, the KML Tests appended to the Complaint, and Plaintiff's own authorities cited or referenced in the Complaint, it is evident that neither Plaintiff nor the general public suffered—or even could suffer—a plausible injury.  As such, Plaintiff lacks both Article III standing and statutory standing under the CPPA, and the Court should dismiss the Complaint with prejudice.

As this Court has previously stated, "There is no standing where a court would have to accept a number of very speculative inferences and assumptions."  *Physicians Comm. for Responsible Med. v. Vilsack*, 867 F. Supp. 2d 24, 28 (D.D.C. 2011) (Leon, J.) (internal quotation marks omitted).  This applies with particular force to the injury in fact requirement.  *See Id.*  To withstand a motion to dismiss for lack of Article III standing, a plaintiff must plausibly plead an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180 (2000).  In other words, the injury must be sufficient to vest the plaintiff with "a personal stake in the outcome of the controversy."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

An organizational plaintiff can assert Article III standing either on its own or on behalf of its members.[2]  *Conference of State Bank Supervisors v. Office of the Comptroller of the Currency*, 313 F. Supp. 3d 285, 295 (D.D.C. 2018).  If asserted on its own behalf, courts "conduct the same inquiry as in the case of an individual."  *Havens Realty Corp. v. Coleman*,

---

[2] Plaintiff does not allege that it has any members, much less that any of them were injured.

455 U.S. 363, 378-79 (1982).  At bottom, an organization must prove that the defendant's actions "perceptibly impaired" the organization's services or caused a "concrete and demonstrable injury to the organization's activities."  *Id.* at 379.  However, a simple "conflict between a defendant's conduct and an organization's mission is alone insufficient to establish Article III standing."  *Ctr. for Law & Educ. v. Dep't of Educ., 39*6 F.3d 1152, 1161 (D.C. Cir. 2005).

An organizational plaintiff also generally cannot rely on the alleged injuries of the general public to establish standing.  For example, the third-party standing doctrine requires the plaintiff to have standing in his or her own right.  *See Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 357 n.13 (D.D.C. 2020) ("Plaintiffs' assertion of third-party standing does not excuse their burden to establish that they have Article III standing in their own right.").  And although D.C. Code § 28-3905 provides a grant of statutory standing for an organization to bring CPPA claims "on behalf of the general public" under certain circumstances, it does not relieve the organization of its burden to prove that a "consumer or class could bring an action" under the CPPA in their own right.  *See* D.C. Code § 28-3905(k)(1)(D)(i).

Here, Plaintiff fails to allege that it suffered any injury—much less a concrete or particularized one—and thus lacks Article III standing to pursue its negligence claim.  The only potential source of injury that can be gleaned from the Complaint is that the Products may contain *B. cereus*, which can cause food poisoning if sufficiently concentrated.  *See* Compl. ¶¶ 14, 20, 35.  But Plaintiff is a non-profit organization that cannot suffer from food poisoning itself.  Even accepting as true Plaintiff's demonstrably false assertion that the Products somehow could cause consumers to suffer from food poisoning, Plaintiff cannot show any perceptible impairment to its services or activities as a result.  *See Havens Realty Corp.*, 455 U.S. at 379.  A simple conflict between 310 Nutrition's alleged misconduct and Plaintiff's purported consumer

protection mission "is alone insufficient to establish Article III standing." *See Ctr. for Law & Educ., 39*6 F.3d at 1161.  Without standing in its own right, Plaintiff also cannot invoke the third-party standing doctrine to sue on behalf of the general public either. *See Turner*, 502 F. Supp. 3d at 357 n.13.  Plaintiff therefore lacks Article III standing to bring its negligence claim on its own behalf or on behalf of the general public.

Plaintiff also lacks statutory standing to bring a CPPA claim on behalf of the "general public of the District of Columbia," Compl. ¶¶ 10-11, because Plaintiff cannot point to a consumer or a class of consumers that could bring this action in their own right as D.C. Code § 28-3905(k)(1)(D)(i) requires.  Plaintiff's conception of injury to a consumer or class a class of consumers impermissibly builds on "a number of very speculative inferences and assumptions." *Vilsack*, 867 F. Supp. 2d at 28.  For example, Plaintiff claims that the Products contain less than 10 cfu/g of *B. cereus*, a bacteria that can cause food poisoning in sufficient concentrations. *See* Compl. ¶¶ 14, 20; Compl., Ex. B.  But the KML Tests appended to the Complaint do not establish that the Products actually contain sufficient amounts of *B. cereus* to support a CPPA claim.  The KML Tests show that KML Labs is incapable of actually analyzing *B. cereus* in a product unless it exceeds KML Labs' detection limit of 10 cfu/g. *See* Compl., Ex. B at 1-4; *see also* Int'l Union of Pure & Applied Chemistry, Compendium of Chemical Terminology 399 (2d ed. 1997) (defining a "detection limit" as the "minimum single result which can be distinguished from a suitable blank value. The limit defines the point at which the analysis becomes possible").  KML Labs was also careful to note with a distinct "‡" symbol that its *B. cereus* results "may" not fall within KML Labs' ISO accreditation.  Compl., Ex. B at 1-4.  In other words, Plaintiff speculates and assumes that the Products actually contain a sufficient amount of *B. cereus* to

support a CPPA claim even though Plaintiff's chosen lab cannot analyze *B. cereus* content under 10 cfu/g and may not be accredited to test for *B. cereus* in any event.

Even accepting as true that there is an amount less than 10 cfu/g of *B. cereus* present in each Product, Plaintiff then makes a vast and erroneous inferential leap to the conclusion that the Products therefore pose a significant risk of causing human illness. *See* Compl. ¶¶ 21-23, 35. However, Plaintiff's own authorities make clear that *B. cereus* "is commonly found . . . in many raw and processed foods" and that an amount less than 10 cfu/g of *B. cereus* is not remotely capable of causing human illness. *See* FDA BAM Chapter 14 (indicating that "*B. cereus* food poisoning may occur" only when there is at least $10^6$ cfu/g of *B. cereus* present); *accord* FDA Bad Bug Book (indicating that that there must be $10^5$ to $10^8$ cfu/g of *B. cereus* present to create any reasonable possibility of human illness); Todar's Textbook ("The diagnosis of *B. cereus* food poisoning can be confirmed by the isolation of greater than or equal to $10^5$ *B. cereus* organisms per gram."). Stated differently, the *B. cereus* content in the Products would need to be anywhere from *10,000 to 10,000,000 times greater* than alleged to create any potential for human illness. *See* FDA BAM Chapter 14; FDA Bad Bug Book; Todar's Textbook. Plaintiff's theory of injury to consumers is therefore implausible and a far cry from the concrete and particularized injury required for standing. Accordingly, because no consumer or class of consumers has suffered—or even could suffer—an injury from the Products, Plaintiff also lacks statutory standing to bring a CPPA claim. *See* D.C. Code § 28-3905(k)(1)(D)(i).

In short, Plaintiff lacks Article III standing in its own right because it fails to allege any concrete or particularized injury that it suffered. Plaintiff also lacks both Article III and statutory standing to prosecute its claims on behalf of anyone else because the third-party standing doctrine does not apply and Plaintiff does not meet D.C. Code § 28-3905(k)(1)(D)(i)'s

requirements.  Accordingly, the Court should dismiss the Complaint with prejudice for lack of standing.

## II.    Plaintiff Has Failed to Plausibly Plead a CPPA Claim or a Negligence Claim Under a Negligence Per Se Theory.

### A.    Plaintiff's CPPA Claim Fails as No Reasonable Consumer Was Misled by the Immaterial Fact that the Products May Contain Under 10 cfu/g of *B. Cereus*.

Plaintiff alleges that 310 Nutrition violated six subsections of the CPPA, but Plaintiff's conclusory, scattershot allegations are unsupported by the KML Tests themselves and undermined by Plaintiff's own authorities.  Compl. ¶ 31 (citing D.C. Code § 28-3904(a), (d), (e), (f), (f-1), and (h)).  Accordingly, the Court should dismiss Plaintiff's CPPA claim with prejudice.

Under the CPPA, it is a violation "for any person to engage in an unfair or deceptive trade practice."  D.C. Code § 28-3904.  The CPPA provides several examples of "unfair or deceptive trade practices," including, as relevant here: (a) "represent[ing] that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;" (d) "represent[ing] that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;" (e) misrepresent[ing] . . . a material fact which has a tendency to mislead;" (f) "fail[ing] to state a material fact if such failure tends to mislead;" (f-1) "use[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead;" and (h) "advertis[ing] or offer[ing] goods or services without the intent to sell them or without the intent to sell them as advertised or offered."  *Id.* § 28-3904(a), (d), (e), (f), (f-1), (h).

Claims for unfair trade practices under the CPPA are "properly considered in terms of how the practice would be viewed and understood by a reasonable consumer."  *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010) (Leon, J.) (quoting *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008)).  This inquiry can and should be decided at the motion to dismiss stage where,

as here, there is no possibility that a reasonable consumer could be misled.  *See Alicke v. MCI Communs. Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (affirming the grant of a 12(b)(6) motion because the defendant's "billing practices could not mislead a reasonable customer"); *Whiting*, 701 F. Supp. 2d at 30 (this Court granting a 12(b)(6) motion because, "[q]uite simply, there is no misrepresentation here, and no reasonable consumer would have been misled").

Moreover, general references to laboratory testing in a complaint is not enough to withstand a motion to dismiss where, as here, the plaintiff fails to provide any additional details about the tests.  For example, in *Myers v. Wakefern Food Group*, 2022 WL 603000, *9-10 (S.D.N.Y. Mar. 1, 2022), the court dismissed a complaint alleging that a food product contained artificial flavoring because the plaintiff failed to provide any details about what the laboratory tests entailed, the methodology followed, and so on.  The court emphasized that merely referencing laboratory tests in a complaint, without more, did not satisfy the plausibility standard.  *Id.*; *accord Hoffman v. Kraft Heinz Foods Co.*, 2023 WL 1824795, at *7-8 (S.D.N.Y. Feb. 7, 2023).

Here, simply appending the KML Tests to the Complaint falls far short of plausibly pleading that the Products contain *B. cereus* in an amount that could possibly give rise to a CPPA claim.  The Complaint vaguely references the KML Tests, Compl. ¶ 20, from which Plaintiff makes a vast inferential leap to the erroneous conclusion that the mere presence of *B. cereus* in a product "poses a risk to consumers' health."  *Id.* ¶ 21.  Plaintiff fails to provide any information about KML Labs' methodology, what the testing entailed, or the significance of the testing.  On their face, the KML Tests show that KML Labs lacks the capacity to actually analyze *B. cereus* content unless there is more than 10 cfu/g present, and KML Labs also may not be certified to test for *B. cereus* in any event as indicated by "‡" symbol next to each *B. cereus* result.  *See*

Compl., Ex. B at 1-4.  Without more, Plaintiff has failed to plausibly plead a CPPA claim.  *See Myers*, 2022 WL 604000,*9, 10; *Hoffman*, 2023 WL 1824795, *7, 8.

Under D.C. Code § 28-3904(a), (d) and (h), the apparent thrust of Plaintiff's allegations is that 310 Nutrition affirmatively represented that its products are safe for human consumption, but because the Products allegedly contain an amount less than 10 cfu/g of *B. cereus*, they are somehow unfit or unsafe for humans to consume as advertised.  *See* Compl. ¶¶ 20-23, 29; Compl. Ex. B.  But these allegations are belied by Plaintiff's own sources referenced or cited in the Complaint.  According to FDA, *B. cereus* is "commonly found in soil, on vegetables, and in many raw and processed foods."  FDA BAM Chapter 14.  However, there is no threat of food poisoning from *B. cereus* unless the concentration is at least *10,000 to 10,000,000 times greater* than Plaintiff alleges.  *See id.*; FDA Bad Bug Book; Todar's Textbook.  As such, no reasonable consumer has been misled because the Products are in fact safe for human consumption even if they contain an amount less than 10 cfu/g of *B. cereus*.

Some claims under the CPPA—i.e., D.C. Code § 28-3904(e), (f), and (f-1)—additionally require a plaintiff to demonstrate that an omission or affirmative representation is "material." *See Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. App. 2013).  Materiality is governed by a "reasonable person" standard and looks to whether "a significant number of unsophisticated consumers would find that information important in determining a course of action."  *Id.* (internal quotation marks omitted).

Under D.C. Code § 28-3904(e), (f), and (f-1) Plaintiff appears to contend that 310 Nutrition has failed to disclose the supposedly "material fact" that each product contains an amount less than 10 cfu/g of *B. cereus*.  *See* Compl. ¶¶ 19-23, 29-31.  As explained above, Plaintiff's own authorities make clear that it is simply not possible for the Products to cause food

-12-

poisoning because they allegedly contain an amount less than 10 cfu/g of *B. cereus*.  *See* FDA BAM Chapter 14; FDA Bad Bug Book; Todar's Textbook.  As such, no reasonable consumer would be misled by 310 Nutrition's alleged failure to disclose this information.  Nor is this information "material" because Plaintiff does not—and cannot—plausibly allege that "a *significant number* of unsophisticated consumers would find that information important" in determining whether or not to purchase the Products.  *See Saucier*, 64 A.3d at 442 (emphasis added).  Accordingly, the Court should dismiss these claims with prejudice because no reasonable consumer would be misled—much less find this information important in making a purchasing decision.

In short, the Court should grant 310 Nutrition's Motion and dismiss Plaintiff's CPPA claim with prejudice because Plaintiff cannot plausibly allege that any reasonable consumer would be misled by 310 Nutrition's supposed failure to disclose the immaterial fact that the Products may contain an amount less than 10 cfu/g of *B. cereus*.

### B.    Plaintiff Fails to Plausibly Plead Any Element of Its Negligence Claim Under a Negligence Per Se Theory.

Plaintiff next asserts that 310 Nutrition is negligent per se because it "violated D.C. Code § 48-103(Q)(i)[3] and was negligent."  Compl. ¶ 37.  Aside from being riddled with conclusory allegations and failing to plausibly plead any element of a negligence cause of action, this claim also shares the same fatal flaws as Plaintiff's CPPA claim given the complete impossibility of human illness from consuming less than 10 cfu/g of *B. cereus* according to the sources cited in the Complaint.  As a result, the Court should dismiss Plaintiff's negligence claim with prejudice.

---

[3] 310 Nutrition assumes that Plaintiff intended to cite D.C. Code § 48-103(2)(Q)(i), which appears to track the language quoted in Paragraph 35 of the Complaint.

As an initial matter, "negligence per se is not in and of itself a separate legal claim - rather, it permits a plaintiff under certain circumstances and under specified conditions, to rely on a statute or regulation as proof of the applicable standard of care." *Hunter v. District of Columbia*, 64 F. Supp. 3d 158, 188-89 (D.D.C. 2014). To sidestep the burden of pleading the duty and breach elements of a traditional negligence claim, a plaintiff relying on the negligence per se doctrine must demonstrate that: (1) there was a violation of a statute designed to promote safety; (2) the plaintiff is within the class of persons the statute was designed to protect; and (3) the resulting injury was "the type of risk against which the statute was designed to protect." *See Ersado v. Rockpoint Grp., LLC*, 2023 WL 2705781, *3 (D.D.C. Mar. 29, 2023). However, none of these negligence per se requirements relieve a plaintiff from the burden of also pleading proximate causation and injury. *See Hunter*, 64 F. Supp. 3d at 189.

Here, Plaintiff's negligence claim flounders at every step. First, Plaintiff fails to plead a statutory violation. The apparent gist of Plaintiff's conclusory allegations is that 310 Nutrition violated D.C. Code § 48-103(2)(Q)(i) because each Product allegedly contains an amount less than 10 cfu/g of *B. cereus*. *See* Compl. ¶¶ 20, 35, 37. D.C. Code § 48-103(2)(Q)(i) just sets forth a statutory definition of "adulterated articles," not a statutory duty or liability standard that actually can be violated. Section 48-103(2)(Q)(i) defines an adulterated article as a "dietary supplement . . . [t]hat presents a significant or unreasonable risk of illness or injury." Even assuming that a statutory definition could operate as a liability standard for negligence per se purposes, Plaintiff does not—and cannot—plausibly allege that the Products are adulterated, nor has Plaintiff explained why the Products are even "dietary supplement[s]" under the statute. Once again, the KML Tests do not plausibly allege that there is an amount of *B. cereus* sufficient to cause illness given KML Labs' detection limitations and possible lack of ISO accreditation.

*See* Compl., Ex. B at 1-4.  But even taken at face value, Plaintiff's own authorities make clear

that there is no risk of illness or injury—much less a "significant" or "unreasonable" risk—from

consuming an amount less than 10 cfu/g of *B. cereus*.  *See* FDA BAM Chapter 14; FDA Bad

Bug Book; Todar's Textbook.  This fundamental flaw cannot be cured by amendment and alone

justifies dismissal with prejudice of Plaintiff's negligence claim.

      Second, Plaintiff does not allege that it is within the class of persons the statute was

designed to protect.  Nor can it.  The D.C. Food Regulation Act of 2002—which implemented

D.C. Code §§ 48-101, et seq.—indicates that the statute was designed to "safeguard the public

health" and to ensure the safety of food products "provided to consumers."  2001 D.C. Sess. L.

Serv. 1 (West 2001).  As a corporate entity, Plaintiff thus falls outside the statute's protective

umbrella.  Although Plaintiff purports to bring this claim on behalf of "[m]embers of the public,"

Compl. ¶ 41, Plaintiff points to no statutory or other grant of authority—and 310 Nutrition has

found none—that would permit Plaintiff to bring a common law cause of action on behalf of the

general public.

      Third, Plaintiff fails to plead proximate causation and an injury stemming from the type

of risk that the statute was designed to prevent.  Both are essential elements of Plaintiff's claim.

*See Hunter*, 64 F. Supp. 3d at 189.  Instead, Plaintiff contends that 310 Nutrition "was

negligent," that members of the public have "suffered injury," and that there was "harm caused

by 310 Nutrition."  Compl. ¶¶ 37, 40-41.  The Court should disregard these wholly conclusory

allegations.  *See Iqbal*, 556 U.S. at 678.  But at a more fundamental level, Plaintiff is a corporate

entity that can suffer only monetary losses, not the physical illness or injury contemplated by

D.C. Code § 48-103(2)(Q)(i).  This means that Plaintiff simply cannot suffer an injury stemming

from a risk the statute was designed to prevent.  *See 325-343 E. 56th St. Corp. v. Mobil Oil*

*Corp.*, 906 F. Supp. 669, 687 (D.D.C. 1995) (granting motion to dismiss because the statute at issue was designed "to protect the public from the harm of contaminated drinking water, not to protect a certain class of persons seeking to recover monetary losses" (citation omitted)).

In short, Plaintiff's claim for "Failure to Warn Negligence Per Se" should be dismissed with prejudice because (1) it rests on the same flawed theory as Plaintiff's CPPA claim that an amount less than 10 cfu/g of *B. cereus* can cause human illness, and (2) Plaintiff does not—and cannot—plausibly plead multiple elements of its negligence claim.

## **CONCLUSION**

The Court should grant 310 Nutrition's Motion and dismiss the Complaint with prejudice because Plaintiff lacks Article III and statutory standing to bring either of its claims and fails to state a plausible CPPA or negligence claim in any event.

Dated:  April 7, 2023

By:     /s/ *Sascha Henry*
        Sascha Henry (Admitted Pro Hac Vice)
        James Glassman (Admitted Pro Hac Vice)
        Sheppard Mullin Richter & Hampton LLP
        333 S. Hope Street, 43rd Floor
        Los Angeles, CA 90017
        Telephone: (213) 620-1780
        Facsimile:  (213) 620-1398
        shenry@sheppardmullin.com
        jglassman@sheppardmullin.com

        /s/ *Hannah Wigger*
        Hannah Wigger (D.C. Bar No. 208851)
        Sheppard, Mullin, Richter & Hampton LLP
        2099 Pennsylvania Avenue NW
        Washington, D.C.  20006
        Telephone:  202-747-1931
        Facsimile:  202-747-3817
        hwigger@sheppardmullin.com

        *Attorneys for Defendant 310 Nutrition, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

On April 7, 2023, I electronically filed the foregoing document through the CM/ECF

system, which will send a notice of electronic filing to the attorneys of record.


*/s/ Sascha Henry*_____
Sascha Henry